IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CHARLES F. EUDY**                                                            **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO 3:06cv50-WHB-JCS**

**THE CITY OF RIDGELAND, MISSISSIPPI, and
MATTHEW BAILEY, Individually and in his
Official Capacity**                                                            **DEFENDANTS**

## OPINION AND ORDER

This cause is before the Court on the Motion of Defendants to Dismiss pursuant to Rule 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for Summary Judgment.[1]  Through the subject Motion, Defendants seek dismissal of the Complaint on the grounds that it fails to state a violation of constitutionally protected rights.  Defendant Matthew Bailey also moves for dismissal of the claims alleged against him in his individual capacity.  The Court has considered the Motion, Response, Rebuttal, as well as supporting and opposing authority, and finds that the Motion is not well taken and should be denied.

---

[1] As the Court was not presented or required to consider any "matters outside the pleadings" when ruling on the subject motion to dismiss, the Court finds it unnecessary to convert the subject motion into one for summary judgment.  See FED. R. CIV. P. 12(b)(6).

## **I.   Factual Background and Procedural History**

The following recitation of facts is based on the allegations in Plaintiff's Complaint and other pleadings before the Court.

In 2004, Plaintiff Charles Eudy ("Eudy") was employed as a Sergeant in the City of Ridgeland, Mississippi, Fire Department ("Department").  Eudy alleges that in the Fall of that year, several firefighters in the Department approached him and expressed concerns regarding the promotional process implemented by Matthew Bailey, who is the Chief of the Department ("Chief Bailey"). Specifically, some of the other firefighters complained that the physical agility test, which a candidate was required to pass in order to be promoted within the Department, discriminated against older firefighters.  The physical agility test required, *inter alia*, a candidate to carry a 75 pound weight while climbing stairs without the use of handrails at a rate of 60 steps per minute for three minutes, and to drag a 170 pound dummy 70 feet.  The Department, however, contrary to its Standard Operations Handbook, made candidates drag a dummy weighing 193 pounds.  Several firefighters had allegedly been injured because they were required to use the 193 pound dummy for testing purposes.

Eudy was not a candidate for promotion in the Fall of 2004 and, therefore, was not required to pass the physical agility test. Eudy, however, because of the concerns expressed by the other firefighters regarding the test, met with Chief Bailey on October

21, 2004, and again on November 2, 2004, to discuss these concerns. Upon receiving a negative reaction from Chief Bailey during these discussions, Eudy filed a formal grievance regarding the concerns discussed above on November 5, 2004.  Thereafter, Chief Bailey – allegedly in violation of the Standard Operating Procedure Manual of the Department – appointed a Safety Committee to review the issues raised in the grievance.  The grievance was returned on November 16, 2004, with Chief Bailey refusing to take any action on the handrail issue or the excessive dummy weight issue for the tests that were scheduled for 2004.  Chief Bailey did, however, agree to obtain a 170 pound dummy to be used during the tests scheduled for 2005.

On November 17, 2004, Eudy filed a second grievance with the Human Resource Director for the City of Ridgeland.  Through this grievance, Eudy re-asserted the previously raised safety concerns, and challenged Chief Bailey's allegedly improper appointment of a Safety Committee in response to the first grievance.  The second grievance was returned on December 6, 2004, and Chief Bailey indicated that candidates would be permitted to use handrails during the stair-climbing portion of future physical agility tests and that a properly weighted 170 pound dummy would be ordered and used during future testing.  Two days later, on December 8, 2004, Eudy claims he was severely criticized by Chief Bailey for having filed the grievances.  Eudy further alleges that Chief Bailey

thereafter retaliated against him for having filed the grievances by engaging in a "deliberate course of intimidation" through which other firefighters were coerced into making false statements against him.

On February 1, 2005, Eudy was demoted from the position of Sergeant to Firefighter II, incurred a five-percent reduction in salary, and was assigned to another shift. Although the stated reasons for the demotion were that Eudy violated Sections 8.206 (use of wantonly offensive conduct or language toward the public or fellow employees) and 8.220 (engaging in conduct unbecoming to an employee of the City either while on or off duty) of the City of Ridgeland Handbook ("Handbook"), Eudy claims he was demoted because of the grievances he filed. Eudy further alleges that in demoting him, Chief Bailey violated Section 8.305 of the Handbook, which requires a department head to discuss, presumably with the employee, the circumstances underlying the proposed employment action before imposing discipline. Eudy appealed the demotion to the Board of Alderman of the City of Ridgeland, which upheld the demotion and other actions of Chief Bailey.

On January 26, 2006, Eudy filed the subject lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights. The lawsuit was brought against the City of Ridgeland, Mississippi ("Ridgeland") and Chief Bailey in his individual and official capacities. Defendants now move for

dismissal under Rule 12(b)(1) and/or Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Eudy failed to demonstrate a violation of any constitutional right and, therefore, failed to state a cognizable Section 1983 claim. Chief Bailey also moves for dismissal of the claims alleged against him in his individual capacity.[2]

## II. Rule 12(b)(6) Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "viewed with disfavor" and "rarely granted." Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). When considering such motion, the Court must liberally construe the allegations in the complaint in favor of the plaintiff and accept all pleaded facts as true. Id. quoting Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986)). Although the complaint, "must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial," see Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995), the complaint cannot be dismissed under Rule 12(b)(6)

---

[2] As Eudy has alleged a claim arising under the laws of the United States, this Court may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331. Accordingly, the Court denies the Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Blackburn v. Marshall, 42 F.3d 925, 931 (5th Cir. 1995).  This same rule applies "when immunity is urged as a defense by a motion to dismiss." Chrissy F. by Medley v. Mississippi Dept. of Pub. Welfare, 925 F.2d 844, 846 (5th Cir. 1991).

### III.  Legal Analysis

**A. Do the allegations support a finding that Eudy's constitutional rights were violated?**

Eudy predicates his Section 1983 claim on allegations that Defendants violated his rights as protected by the First and Fourteenth Amendments to the United States Constitution.  As regards the First Amendment claim, it is well established that "the government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment." Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999) (citing Keyishian v. Board of Regents of the Univ. of the State of N.Y., 385 U.S. 589 (1967)).  In order to recover on a First Amendment retaliation claim, a plaintiff must satisfy the following four factors:  (1) the plaintiff must suffer an adverse employment decision; (2) the speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendants' interest in promoting

efficiency; and (4) the speech must have motivated the defendants' action.  Harris, 168 F.3d at 220 (hereinafter "Harris factors").

The record shows that Eudy was demoted on February 1, 2005, thus satisfying the first Harris factor.  See Id. at 221 (finding that reprimands and demotions constitute adverse employment decisions.")(citing Harrington v. Harris, 118 F.3d 369, 365 ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.")).

To satisfy the second Harris factor, Eudy's speech – i.e. the grievances that were filed – must involve a matter of public concern.  On this issue, the United States Supreme Court has held:

> When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest, absent the most unusual circumstances a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to the employee's behavior....
>
> ....
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record.

Connick v. Meyers, 461 U.S. 138, 147-48 (1983).

The Court finds, based on the allegations before it, that the content of the grievances filed by Eudy implicate matters of public concern.  First, Eudy alleges that the subject grievances were filed in response to complaints that the physical agility test

7

discriminated against older members of the Department. Courts have found that complaints of discrimination and harassment in the workplace are matters of public concern. See Connick, 461 U.S. at 148 n.8 (finding that a plaintiff's "right to protest racial discrimination [is] a matter inherently of public concern."); Givhan v. Western Line Consolidated Sch. Dist., 439 U.S. 410, 413 (1979) (finding that a viable First Amendment claim may have been alleged in a case in which the plaintiff's complaints "involved employment policies and practices ... which she conceived to be racially discriminatory in purpose or effect."); Wilson v. UT Health Ctr., 973 F.2d 1263, 1269 (5th Cir. 1992) (finding that the plaintiff's speech, which consisted of complaints of sexual harassment perpetrated against her and her co-employees, was "of great public concern.").

Second, Eudy alleges that the subject grievances were filed to address safety concerns regarding the manner in which the physical agility test was being conducted. Specifically, Eudy alleges that because firefighters were being injured as a result of having to use a 193 pound dummy during the test (as opposed to the specified 170 pound dummy), both the efficiency of the Department and the safety of the citizens of the City of Ridgeland were potentially compromised. The Court finds that if firefighters were indeed being injured in the manner alleged, and thus incapable of performing fire-fighting duties if called upon by the community,

Eudy's grievances implicate matters of public concern. See e.g. Moore v. City of Kilgore, Tex., 877 F.2d 364, 370 (5th Cir. 1989)(finding: "The public, naturally, cares deeply about the ability of its Fire Department to respond quickly and effectively to a fire. If staffing shortages potentially threaten the ability of the Fire Department to perform its duties, people in the community want to receive such information."). See also Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 186-87 (5th Cir. 2005) (finding that "if releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature.").

Based on the allegations before it, the Court also finds the context and form of Eudy's speech suggests that it involves matters of public concern. The grievances did not relate to an employment dispute between Eudy and the Department but, instead, related to the manner in which the Department was being operated as a whole. The United States Court of Appeals for the Fifth Circuit has found that speech in this context is protected under the First Amendment. See Modica v. Taylor, 465 F.3d 174, 181 (5th Cir. 2006)(indicating that the context of the plaintiff's speech favored protection as the speech did not relate to an employment dispute involving the plaintiff, but rather involved the operation of the department as a whole); Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 374 (5th Cir. 2000) (finding that the context of the

plaintiff's speech was public in nature as the speech did not relate solely to her own job, but instead referred to a safety plan that was aimed at protecting all employees as well as the general public).

As to form, the fact Eudy elected to file internal grievances as opposed to airing his concerns to the public or to the media, does not foreclose a finding that his speech was a matter of public concern. See e.g. Rankin v. McPherson, 483 U.S. 378, 386-87 n.11 (finding that the "private nature of [a] statement does not ... vitiate the status of the statement as addressing a matter of public concern."). The record shows that in addition to filing the grievances, Eudy spoke with Alderman Steen and the Mayor of Ridgeland regarding the safety and employment concerns that had been voiced by the other firefighters in the Department. Such conduct favors a finding of public speech. Compare Modica, 465 F.3d at 181 (finding, although not dispositive, that the plaintiff's decision to inform someone outside of her department favored a finding that the form of her speech was public in nature), with Dodds v. Childers, 933 F.2d 271, 274 (5th Cir. 1991) (finding that neither the form nor context of the plaintiff's speech demonstrated a matter of public concern as she did not discuss her complaints with anyone outside her place of employment). Additionally, the fact that the grievances do not relate to a personal employment dispute between Eudy and the

Department or Chief Bailey at the time they were filed, but instead addressed the manner in which the physical agility test potentially affected other members of the Department and the community, favors a finding that the form of Eudy's speech was protected. See Modica, 465 F.3d at 181 (finding that as the plaintiff's speech related to the public, as opposed to a personal grievance, the form of the speech was primarily public).

Based on the foregoing analysis, the Court finds that Eudy's allegations are sufficient show that the content, context, and form of his speech was public in nature, thereby satisfying the second Harris factor.

To satisfy the third Harris factor, "the plaintiff's interest in commenting on matters of public concern must outweigh the defendants' interest in promoting efficiency." Harris, 168 F.3d at 220. The Court is not required to conduct the balancing test set forth by the third factor at this stage of the proceedings. See Kennedy, 224 F.3d at 366 n.9 (finding that the third Harris factor, "being the factually-sensitive balancing test that it is, implicates only the summary judgment, not [the] failure to state a claim, analysis."). If, however, the Court were required to consider the third Harris factor at this stage of the proceedings, it would have to find in favor of Eudy as Defendants have not presented any evidence or cited any other conduct that warranted his demotion. See Thomas v. City of Starkville, Miss., 901 F.2d

456, 461 n.4 (5th Cir. 1990) (quoting Rankin, 483 U.S. at 388 ("The State bears a burden of justifying the [employment decision] on legitimate grounds.")).

Finally, the Court finds that because Eudy alleges he was demoted based on the grievances he filed, he has satisfied the fourth Harris factor. See Kennedy, 224 F.3d at 366 n.9 (finding that the only pertinent question under a Rule 12(b)(6) analysis of the fourth Harris factor is whether the plaintiff "has alleged an adverse employment action motivated by [his] speech, and the demotion satisfies that inquiry.").

As Eudy's allegations are sufficient to satisfy each of the applicable Harris factors, the Court finds that there exists a possibility that he could recover on his Section 1983 claim alleging a violation of his First Amendment rights.[3] Accordingly, the Court finds that Defendants are not entitled to dismissal of this lawsuit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.   Is Chief Bailey entitled to qualified immunity?**

The defense of qualified immunity is available to state actors who are sued under 42 U.S.C. § 1983. Harlow v. Fitzgerald, 457

---

[3]   As Eudy has alleged a viable claim under the First Amendment that prevents the dismissal of this lawsuit, the Court finds it is unnecessary to determine whether Eudy's lawsuit should be dismissed on the additional grounds that he failed to state a viable Fourteenth Amendment claim.

12

U.S. 800, 818 (1982). Qualified immunity provides a shield from civil liability to officials whose conduct does not reasonably violate a clearly established constitutional or statutory right. Davis v. Sherer, 468 U.S. 183, 194 (1984). See also Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994) ("Whether a government official is entitled to qualified immunity generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.")(alternations in original)(citations omitted). The defense of qualified immunity, however, only applies to claims alleged against officials in their individual, and not their official, capacities. Foley v. University of Houston Sys., 355 F.3d 333, 337 (5th Cir. 2003).

The Court undertakes a two-step analysis to determine whether a defendant may successfully avail himself to the defense of qualified immunity. First, the Court must determine whether the plaintiff has alleged a violation of constitutional or statutory rights. If such violation is alleged, the Court next considers "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." Hare v. City of Corinth, 135 F.3d 320, 326 (5th Cir. 1998)(citing Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993) ("When evaluating whether a plaintiff

13

stated a constitutional violation, we look to currently applicable constitutional standards. However, the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question.")) (alterations in original)(quotations and citations omitted). See also Anderson v. Creighton, 483 U.S. 635, 638 (1987) (finding that qualified immunity shields government officials provided "their actions could reasonably have been thought consistent with the rights they are alleged to have violated.").

As a preliminary consideration, in cases in which the defendant claims he is entitled to qualified immunity, the complaint must be analyzed under a "heightened pleading requirement." See Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996). Under this standard, a plaintiff is not permitted to plead "bald allegations" and/or "conclusory statements." Wicks v. Mississippi St. Employment Servs., 41 F.3d 991, 994-95 (5th Cir. 1995). Instead, the plaintiff must plead facts "specifically focusing on the conduct" of the defendant which, if proven, would demonstrate that the defendant had violated a clearly established constitutional or statutory right. Id. The Court finds that Eudy's allegations are sufficient to satisfy this heightened pleading standard.

14

To determine whether Eudy has alleged a violation of a constitutional or statutory right, the United States Court of Appeals for the Fifth Circuit:

> Requires not only a determination of whether the speech is public or private in nature, but also – if the speech at issue is found to be public in nature – a balancing of the interests of the employee, as a citizen, in commenting upon the matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

Thompson, 901 F.2d at 468 n.12.  As discussed above, the Court finds Eudy's allegations are sufficient to show that the grievances he filed constitute public speech.  Second, as Defendants have not cited any other conduct on the part of Eudy that warranted his demotion, or indicated the manner in which the subject grievances disrupted the operation of the Department, the Court finds that the balance between Eudy's speech and the interest of the Defendants to promote efficiency, weighs in Eudy's favor.  Accordingly, the Court finds Eudy has alleged a violation of his First Amendment rights.

Having found an alleged violation of a constitutional right, the Court now considers whether the right was clearly established at the time of Eudy's demotion and, if so, whether Chief Bailey's conduct was objectively unreasonable.  On this issue, the Fifth Circuit has found that since at least 1981, it has been "well settled that public employees c[an]not be fired for exercising their first amendment rights, even when such speech [takes] place

15

in a private forum." Id. at 470.  Since that time, both the United States Supreme Court and the Fifth Circuit "have repeatedly reaffirmed the protection accorded to speech by a public employee speaking out on matters of public concern."  Id.  In addition, the City of Ridgeland Handbook allegedly makes clear that employees have the right to file grievances "without fear of interference, coercion, restraint, discrimination, or reprisal" and, further, the Handbook "expressly prohibits retaliation against an employee for filing a grievance."  Compl. at ¶ 21.

In the event Eudy proves he was demoted by Chief Bailey because of the grievances he filed, the Court would be required to find that "such retaliatory behavior is not of the nature that any reasonable official could possibly have thought legitimate." Thompson, at 470.  Accordingly, based on the allegations before it, the Court finds that Eudy has a possibility of recovering on the Section 1983 claim alleged against Chief Bailey in his individual capacity.  The Motion of Chief Bailey to dismiss this claim must, therefore, be denied.

### IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendants to Dismiss, or in the alternative, for Summary Judgment [Docket No. 10] is hereby denied.

IT IS FURTHER ORDERED that the stay previously entered in this case is hereby lifted.  Counsel for Defendants, as the moving parties, shall contact the Chambers of United States Magistrate Judge James C. Sumner within five days of the date this Opinion and Order is entered to request a case management conference.

SO ORDERED this the 21st day of November, 2006.


s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE